**KNAUF FIBER GLASS, GMBh, Appellant,**

v.

**Sidney STEIN, Trustee of Ashcraft Trucking, Inc., and Neil Shook, Trustee of Glyn Ashcraft and Carolyn Ashcraft, Appellees.**

No. 03S05–9310–CV–1145.

Supreme. Court of Indiana.

Oct. 22, 1993.

Robert T. Thopy, McNeely, Sanders, Stephenson & Thopy, Shelbyville, Michael R. Fruehwald, Barnes & Thornburg, Indianapolis, Patrick W. Harrison, Beck & Harrison, Columbus, for appellant.

Robert Garelick, Steven M. Crell, S. James Fishman, Mantel, Cohen, Garelick, Reiswerg & Fishman, Indianapolis, Richard S. Eynon, Barbara Stevens, Columbus, for appellees.

SHEPARD, Chief Justice.

When a major customer induces a business corporation to expand its operations in anticipation of additional purchases, does the major customer owe a duty to the shareholders of the corporation who guarantee loans necessary to the expansion? We hold there is generally no such

duty, that damage suffered by the shareholders on the guarantee is derivative of damages suffered by the corporation itself.

## Procedural History

When Ashcraft Trucking, Inc., and its owner Glyn Ashcraft went bankrupt in 1985, the trustees in bankruptcy sued Knauf Fiber Glass Corporation ("KFG"). According to the trustees, Glyn's business and personal bankruptcies were the result of promises KFG made but did not keep. There were four theories of liability: breach of contract, promissory estoppel, fraud, and constructive fraud. After a lengthy trial, the jury returned a verdict in favor of the Trucking Company trustee in the amount of $2.027 million and in favor of Glyn Ashcraft's trustee in the amount of $1.722 million. Knauf Fiber Glass appealed. The Court of Appeals reversed the Trucking Company judgment and remanded for a new trial on damages; it affirmed the judgment for Glyn Ashcraft's trustee. *Knauf Fiber Glass v. Stein* (1993), Ind. App., 615 N.E.2d 115. We grant transfer to consider KFG's challenge against the Glyn Ashcraft judgment.

## Factual History

Ashcraft Trucking Company began operation at Shelbyville, Indiana, in 1970. Glyn Ashcraft has always been its president and sole shareholder. The Company's initial fleet consisted of four or five operating tractors and twelve to fourteen trailers. During its early years, Ashcraft Trucking's best customer was CertainTeed, a Shelbyville fiberglass manufacturing plant. CertainTeed was sold to appellant KFG in early 1978.

In 1979, KFG expanded its production, and KFG president Theis Knauf asked Glyn Ashcraft if he was interested in hauling more fiberglass. Glyn indicated it would be difficult to obtain financing for additional tractors, and he expressed concern that the resulting obligation might eventually force him out of business. Theis agreed to assist in securing the necessary financing.

Ashcraft Trucking obtained financing for the new trucks through the White Motor Credit Corporation. It was able to do so because (a) Glyn executed a personal guaranty, (b) KFG prepared a letter committing fifty percent of its outbound loads to Ashcraft Trucking for the year 1979, and (c) KFG entered into an escrow agreement with White Motor Credit Corporation which provided, among other things, that if goods were shipped, amounts which became due to Ashcraft Trucking would be paid into an escrow account and applied to the loan. Ashcraft purchased the new trucks and hauled the additional loads of fiberglass for KFG. The financial condition of Ashcraft Trucking improved dramatically.

On April 20, 1983, KFG sent a letter to Ashcraft Trucking notifying it of plans to increase production at the Shelbyville plant, doubling KFG's shipping volume. The notice invited Ashcraft Trucking to reply by April 27 and indicated that if Ashcraft Trucking was interested in additional business KFG proposed to split the added volume equally between Ashcraft Trucking and another trucking firm for 1983 and 1984. At that time, Ashcraft was hauling approximately 330 truckloads per month for KFG.

In response to the notice, Glyn Ashcraft wrote KFG on April 26, indicating that in order to handle the increased delivery Ashcraft Trucking would need an additional thirty to thirty-five tractors and fifty trailers. Thereafter, Glyn contacted White Motor Credit Corporation to discuss financing for forty-five new tractors at a cost of $2.6 million. White Motor required essentially the same terms as those used for the 1979 loan. On September 15, 1983, representatives of the White Motor Credit Corporation, Ashcraft Trucking Company, and KFG met to discuss the prospects of future business between Ashcraft Trucking and KFG. Representatives of KFG confirmed previous statements about the expected doubling of Ashcraft Trucking business to between 600 and 700 loads per month.

On October 19, 1983, KFG sent a letter to Ashcraft Trucking which read in pertinent part:

Knauf Fiber Glass would like Ashcraft Trucking to be in a position to handle an average of 455 loads per month. The seasonality effect could result in a low of 410 and a high of 500.

Our commitment is of course contingent on your company remaining competitive with both rates and service.

Record at 3295. In November 1983, White Motor Credit Corporation approved the $2.6 million loan to Ashcraft Trucking. Glyn Ashcraft signed a personal guaranty, the 1979 escrow agreement was amended to reflect the new obligation, and Ashcraft Trucking purchased forty-five new trucks and fifty new trailers.

After taking possession of the new tractors and trailers, however, Ashcraft Trucking's business with KFG did not increase. Rather, it declined to a little over 200 loads per month. KFG's Harold Waters informed Glyn Ashcraft that although KFG had the capacity to increase business to Ashcraft Trucking to 455 loads per month, KFG decided to distribute available loads among three or four other carriers. Despite efforts to replace the lost KFG business, Ashcraft Trucking sustained heavy economic losses. In January 1985 the Company filed for Chapter 11 reorganization; the case was later converted to a Chapter 7 liquidation. Thereafter, creditors of Ashcraft Trucking sued Glyn Ashcraft on the personal guarantees, and he and his wife Carolyn Ashcraft filed a joint petition for bankruptcy in July 1985.*

Sidney Stein was appointed as trustee over the bankruptcy estate of Ashcraft Trucking Company and Neil Shook was appointed as trustee over the bankruptcy estate of Glyn Ashcraft. As successors in interest, the trustees filed this civil action against KFG.

### The Glyn Ashcraft Claim

KFG argues that Glyn Ashcraft is not entitled to pursue a claim in his own name under the same facts and legal theories presented in the claim made for Ashcraft

Trucking, Inc. KFG contends the trial court should have granted its motion for a judgment on the evidence on this basis. Ashcraft contends that the relationship between KFG and Glyn Ashcraft was such that it imposed a duty on KFG separate and distinct from the duty KFG owed Ashcraft Trucking.

Both parties recognize the general rule of corporations that a shareholder may not maintain an action in his or her own name to redress an injury to the corporation. *Speedway Realty Co. v. Grasshoff Realty Corp.* (1966), 248 Ind. 6, 216 N.E.2d 845; *Moll v. South Central Solar Sys., Inc.* (1981), Ind.App., 419 N.E.2d 154. As Judge Easterbrook has observed, allowing the shareholder to sue would amount to "double counting." *Mid–State Fertilizer Co. v. Exchange Nat'l. Bank,* 877 F.2d 1333, 1335 (7th Cir.1989). This has been the rule in Indiana for some time. *Tomlinson v. Bricklayer's Union* (1882), 87 Ind. 308.

We recognized the possibility of a shareholder's claim, however, in *Sacks v. American Fletcher Natl. Bank* (1972), 258 Ind. 189, 279 N.E.2d 807. Justice Hunter explained: "A personal cause of action arises when there is a breach of a duty owed specially to the stockholder separate and distinct from the duty owed to the corporation." 258 Ind. at 194, 279 N.E.2d at 811. We relied on the Fifth Circuit's decision in *Schaffer v. Universal Rundle Corp.,* 397 F.2d 893 (5th Cir.1968), in which that court emphasized that damage to the corporation and the individual shareholder was not enough to support a cause of action by the latter. We noted that Sacks had a contract with AFNB providing for Sack's guarantee. The bank had required Sacks to give a personal guarantee as a condition of its extension of credit to the corporation with which Sacks was associated. Thus, we explained, "personal guarantee for a loan to a corporation can be the basis for a personal

* Carolyn Ashcraft's claim was dismissed before trial and therefore she is not a party to this appeal.

cause of action." *Sacks*, 258 Ind. at 195, 279 N.E.2d at 812.

This relationship was similar to that in another case we relied on in *Sacks, Buschmann v. Professional Men's Ass'n.*, 405 F.2d 659 (7th Cir.1969). In that case, the plaintiff had entered into a pre-incorporation contract with the defendant under which the defendant was to provide management for the new corporation in exchange for plaintiff's contribution of assets and guaranty of the new corporation's debt. As the Seventh Circuit explained, "the defendant made promises directly to Buschmann the breach of which gave rise to a cause of action." 405 F.2d at 663.

Here, the plaintiff offered extensive evidence about the close working relationship between KFG and its personnel and Ashcraft Trucking and its personnel, including Glyn Ashcraft, president and sole shareholder. When the relationship was building in 1979, the president of KFG told Ashcraft, "You buy the trucks and haul the fiberglass, and I'll see that you don't go out of business." Record at 3063–69, 3361.

■ The events which are the subject of this lawsuit, however, occurred in late 1983. There was extensive evidence of discussions between representatives of the two companies, and plaintiffs introduced the letter from KFG asking that Ashcraft Trucking prepare for expanded business. Many of these communications involved president Glyn Ashcraft, but there was nothing about this dialogue which required Ashcraft to act in any role other than as president and stockholder. There were no agreements or demands of the sort recognized in *Sacks* or *Buschmann*. There was no indication that KFG had asked or urged Glyn Ashcraft to give a personal guarantee. There was thus no "duty owed specially to the stockholder separate and distinct from the duty owed to the corporation." *Sacks*, 258 Ind. at 194, 279 N.E.2d at 811. Accordingly, KFG was entitled to a judgment on the claim of Glyn Ashcraft.

We grant transfer and reverse the judgment entered on the claim of Glyn Ashcraft. The Court of Appeals correctly decided the issues concerning the claim of Ashcraft Trucking, and we summarily affirm their opinion on those points. Ind.Appellate Rule 11(B)(3). We remand to the trial court with instructions to enter judgment for KFG on Glyn Ashcraft's claim and to conduct a new trial on the issue of damages incurred by Ashcraft Trucking.

DeBRULER, DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents without separate opinion.