**Harrison EPPERLY, Appellant–Defendant,**

v.

**Fred C. JOHNSON, Appellee–Plaintiff.**

**No. 49A05–9908–CV–351.**

Court of Appeals of Indiana.

Aug. 30, 2000.

Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham Summers Welsh & Spilman, Indianapolis, Indiana, Attorneys for Appellant.

Robert G. Barker, J. Chris Reininga, Barker & Reininga, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Harrison Epperly appeals a jury verdict and judgment against him in favor of Fred Johnson in an action for fraud, constructive fraud, and breach of contract. Johnson was awarded actual damages in the amount of $1,000,000 and punitive damages in the amount of $2,000,000. Epperly raises seven issues, which we consolidate and restate as:

1. Whether a valid oral agreement to subsequently enter into a business partnership is formed when the parties agree to create an entity to purchase real estate;

2. Whether a party to an oral contract to form a partnership to purchase real estate has failed to perform when the agreement provides that a loan is to be evidenced by a promis-

sory note, but the note is not presented prior to closing;

3. Whether there is injury sufficient to support a fraud action when the only asserted injury is the loss of an interest in real estate to which the injured party also asserted a contractual right;

4. Whether the trial court erred when it declined to instruct the jury that a duty in a constructive fraud action exists only when the parties have a fiduciary relationship, but instead instructed the jury only that the plaintiff must prove "a duty existed between the parties by virtue of the relationship of the parties";

5. Whether a relationship is sufficient to give rise to a duty in a constructive fraud action where both parties are shareholders in a closely held corporation not involved in the transaction in which constructive fraud is alleged and where the parties had previously been involved in similar real estate transactions; and

6. Whether the award of punitive damages was proper.

We affirm in part and reverse in part.

## FACTS

In 1990, Johnson learned that a golf course in Florida ("Pine Ridge") was for sale. He had no money to invest so he contacted Epperly about the purchase. The two entered into an oral agreement whereby a partnership would be formed to purchase Pine Ridge. Epperly would loan Johnson $150,000 as Johnson's 25% share of the down payment. Epperly did not

loan Johnson the money and Epperly and his partners purchased Pine Ridge without Johnson.

Johnson brought an action alleging Epperly had breached the contract and had actually and constructively defrauded Johnson. The jury awarded Johnson $1,000,000 in actual damages, representing a 25% share of the 1998 value of Pine Ridge, and $2,000,000 in punitive damages.

## DISCUSSION AND DECISION

### Standard of Review

 On appeal, a general verdict will be sustained on any theory consistent with the evidence. *Tipmont Rural Elec. Membership Corp. v. Fischer,* 697 N.E.2d 83, 86 (Ind.Ct.App.1998), *aff'd,* 716 N.E.2d 357 (Ind.1999). We will not reweigh the evidence nor judge the credibility of the witnesses, but will consider only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom. *Id.* Only where there is a total failure of evidence or where the jury verdict is contrary to the uncontradicted evidence will it be reversed. *Id.*

### 1. The Oral Contract[1]

 Epperly argues there could not have been a binding contract because Johnson's claim of an ownership interest in the entity that owned Pine Ridge was essentially a claim that he was entitled to be a limited partner in that entity and that such interest cannot be created without a writing. Even if there had been a contract, Epperly argues, Johnson did not perform his part of the agreement because

---

1. Epperly does not specifically argue on appeal that the amount of compensatory damages assessed by the jury was improper. The jury in its general verdict "assess[ed] Plaintiff's damages in the sum of $1,000,000" and further found "the Plaintiff is entitled to a punitive damages award in the amount of $2,000,000." (R. at 1489.) The award of damages is a matter within the sound discretion of the trial court and we will not reverse an award unless it is unsupported by the evidence. *Paulson v. Centier Bank,* 704

N.E.2d 482, 493 (Ind.Ct.App.1998), *trans. denied,* 714 N.E.2d 174 (Ind.1999). However, to the extent that Epperly does contend that the compensatory damages were improperly awarded in a breach of contract case, he is incorrect. There was evidence presented at trial indicating the value of a 25% interest in Pine Ridge in 1998 would have exceeded $1,000,000. The compensatory damage award of $1,000,000 was within the range of evidence presented.

he never tendered the promissory note representing the loan from Epperly that would permit Johnson to acquire such an interest.

The contract upon which Johnson relies arose out of a meeting between Epperly, Johnson, and Johnson's attorney Stephen Backer.[2] At the meeting, the trial court found in its denial of Epperly's motion to correct error that the parties reached an oral agreement to purchase Pine Ridge and discussed Johnson's participation in the purchase.

■ Johnson notes the general rule that an oral agreement can be a binding contract and relies on *Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind.1996), for the proposition that parties may make an enforceable contract which obligates them to execute a subsequent final written agreement. The agreement at issue in *Wolvos* gave Meyer an option to purchase some real estate Wolvos owned. Meyer later notified Wolvos that he intended to exercise the option, but after Wolvos determined the cost of the environmental remediation called for in the option agreement, she asserted the option agreement was in fact an unenforceable "agreement to agree." *Id.* at 673. Our supreme court recognized the general rule that a mere agreement to agree at some future time is not enforceable, *id.* at 674, but noted that parties may make an enforceable contract that binds them to prepare and execute a final subsequent agreement. *Id.*

■ Whether such an agreement is an enforceable contract or a mere agreement to agree turns on two questions. First, did the parties intend to be bound by the agreement, or did they intend to be bound only after executing a subsequent written document? *Id.* at 675. If the latter is true, there is no enforceable contract until the subsequent document is executed. *Id.* Second, did the agreement lack such essential terms as to render it unenforceable? *Id.* "All that is required is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom." *Id.* at 676 (quoting *Johnson v. Sprague*, 614 N.E.2d 585, 588 (Ind.Ct.App.1993)).

■ The letter upon which Johnson relies as the memorialization of the oral agreement sets forth Backer's "understanding of the agreement that is to be entered into between [Epperly and Johnson] concerning the formation of the entities which will [purchase and operate Pine Ridge]." (R. at 2510.) The letter indicated Epperly and Johnson would each hold a one-third share in the golf course. Each party's initial capital contribution would be $200,000, with Epperly agreeing to loan Johnson's share to him and with Epperly entitled, while the loan was outstanding, to any dividends or distributions payable to Johnson from partnerships or corporations in which the two had an interest. The oral agreement was subsequently modified to reduce each party's share to one-fourth and to reduce each party's contribution to $150,000. While an interest in the Pine Ridge partnership could not be conveyed by an oral agreement, we cannot say there was a "total failure of evidence" permitting the jury to find the Epperly–Johnson oral agreement amounted to a binding contract to subsequently execute a partnership agreement.

### 2. *Johnson's Performance*

Even if there were a contract, Epperly argues, Johnson's breach of contract claim

---

2. Epperly argues the oral contract could not have been a legally binding agreement in light of Johnson's assertion he is entitled to an ownership interest in the entity that owns Pine Ridge. That entity is a limited partnership; under Florida law Johnson's interest in a limited partnership could not have been created by an oral agreement. The partnership agreement also provided that additional limited partners could not be added without the written consent of all partners and upon execution of a proper amendment to the agreement. (R. at 2813.) However, we believe the jury could reasonably have determined the agreement Epperly breached was not a conveyance of a partnership interest but rather an agreement to form a partnership in the future.

fails because Johnson did not perform his part.[3] Specifically, he argues that if Johnson were to use a loan from Epperly as his investment, Johnson failed to perform because the promissory note was not presented to Epperly. Backer testified at trial that he did not prepare such papers for Johnson, but that such a note would have been prepared prior to the closing of the Pine Ridge purchase. The oral agreement as memorialized in the Backer letter indicates how the interest rate and the due date would be determined, but it does not indicate when the note was to be executed or tendered. Rather, it provides only that "[t]he loan will be evidenced by a promissory note." (R. at 2511.)

 Epperly provides no explanation or legal authority in support of his apparent premise that Johnson was obliged to present the note at a date prior to the closing. Where, as here, the parties to a contract fix no time for the performance of an obligation created by the contract, they are presumed to have in mind a reasonable time. *Fraternal Order of Police Lodge No. 52 v. Civil City of Elkhart,* 551 N.E.2d 469, 472 (Ind.Ct.App.1990). What constitutes a reasonable time depends on the subject matter of the contract, the circumstances attending performance of the contract, and the situation of the parties to the contract. *Id.* The oral contract before us was an agreement to form, at an unspecified date, an entity that would purchase and manage real estate. We decline to hold that a party to such a contract has, by his failure to present at some point prior to closing a promissory note, necessarily failed to perform his contractual obligation. We thus cannot say the jury verdict was improper to the extent it was premised on the existence of a valid oral contract between Epperly and Johnson.

### 3. *Actual Fraud*

In August 1998, some three years after his original complaint for breach of contract and constructive fraud was filed, Johnson filed a Second Amended Complaint in which he added a third count alleging actual fraud. This count was premised on the allegation that Epperly lied to Johnson when he told Johnson that one of the partners involved in the Twisted Oaks[4] golf course was concerned about Johnson's involvement in Pine Ridge.

Johnson alleged that after he and Epperly entered into and subsequently modified the oral agreement to buy Pine Ridge, Epperly called Johnson and asked him, as a "personal favor," (R. at 2599), to step out of the Pine Ridge deal for a maximum of six months because one of Epperly's Twisted Oaks partners had expressed concern about Johnson's participation in Pine Ridge. Epperly told Johnson that he would see to it that Johnson became a partner after the closing. Johnson did as Epperly had requested, and when the Pine Ridge purchase closed, Johnson's name was not on any of the documents. Some two months later, Johnson testified that he approached Epperly and asked him to convey to Johnson the 25% interest in Pine Ridge Johnson had been promised. Epperly laughed, got in his car, and drove off. In reliance on Epperly's misrepresentation, Johnson asserts, he decided to temporarily forego his 25% interest in Pine Ridge and he was injured as a result.

---

**3.** Epperly first argues Johnson failed to perform because there was no evidence that Johnson ever tendered the $150,000 necessary for him to acquire an interest in Pine Ridge. We note that the agreement called for Johnson's interest to be funded by a loan from Epperly. Epperly appears to be asking us to hold that a loan agreement does not ripen into a valid contract until the borrower tenders the subject of the loan to the lender. We decline to so hold.

**4.** Before the transaction at issue here took place, Johnson and Epperly had participated as members of two investor groups that acquired and managed the Twisted Oaks golf course. The two investor groups formed Beverly Golf Management, Inc. to buy and manage the golf course. The Johnson-led group and the Epperly-led group each had three members.

The jury was properly instructed on the five elements of actual fraud: 1) a false statement of past or existing material fact 2) made with knowledge it was false or made recklessly without knowledge of its truth or falsity 3) made for the purpose of inducing the other party to act upon it 4) and upon which the other party did justifiably rely and act 5) proximately resulting in injury to the other party. *See Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind.1996). However, Johnson's actual fraud claim fails because Epperly's misrepresentation was merely a breach of the parties' oral contract. The misrepresentation did not result in injury distinct from that resulting from the breach, and it thus is not independently actionable as fraud.[5]

A promisor's motive for breaching his contract is generally regarded as irrelevant, as the promisee will be compensated for all damages proximately resulting from the breach. *Vernon Fire & Cas. Ins. Co. v. Sharp*, 264 Ind. 599, 607, 349 N.E.2d 173, 180 (1976). Each party to a contract has "common law rights to breach a contract and pay a rightful amount of compensatory damages." *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind.1993). Breaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent, *id.* at 983, but merely giving a false reason for breaching the contract does not convert the breach into fraud. *See Sample v. Kinser Ins. Agency, Inc.*, 700 N.E.2d 802, 805 (Ind.Ct.App.1998) (even if false reason is given for termination of employee, "the result is still the same, namely: loss of employment"). There was no evidence of damage from Epperly's misrepresentation independent of the damage Johnson suffered from Epperly's breach of the oral contract. To the extent the jury's general

verdict was premised on actual fraud, the verdict was thus erroneous.

### 4. The Constructive Fraud Instruction

The trial court erred when it declined to give the following instruction Epperly tendered:

> Duty in constructive fraud only exists where there is a fiduciary relationship or, in the case where there is a buyer and a seller, where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other.
> MULLEN V. COGDELL, 643 N.E.2d 390 [Ind.Ct.App.1994].

(R. at 1374.) Instead, the jury was instructed that to recover for constructive fraud Johnson must prove "a duty existed between the parties by virtue of the relationship between the parties." (*Id.* at 1474.)

It is error to refuse a tendered instruction if 1) the instruction correctly states the law; 2) the substance of the instruction is correct; 3) the instruction is supported by the evidence; 4) the instruction does not repeat material adequately covered by the other instructions; and 5) the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. *Dollar Inn, Inc. v. Slone*, 695 N.E.2d 185, 190 (Ind.Ct.App. 1998), *trans. denied.*

### A. Does the Instruction Correctly State the Law?

Johnson argues Epperly's tendered instruction does not correctly state the law because "it would have limited the jury's determination of whether [Epperly] owed Johnson a duty under constructive fraud to only two of at least three or four possible types of relationships which Indiana law holds supports such a duty."

---

5. Epperly argues in the alternative that Johnson could not have been injured by the misrepresentation because any legally enforceable interest Johnson had could have arisen only out of a contractual right to invest in Pine Ridge, and Johnson had no such right. Because we hold the jury could have reasonably determined there was such a contractual right we need not address that argument.

(Br. of Appellee at 47–48.) The tendered instruction, Johnson argues, "fails to inform the jury that duty in constructive fraud may also exist where there is a confidential relationship or personal friendship." (*Id.* at 47.)

Johnson offers no explanation in support of his implicit premise that a "confidential" relationship is different in any way pertinent to this dispute from a "fiduciary" relationship. *See Black's Law Dictionary* 370 (revised 4th ed.1968) (defining "confidential relation" as "A fiduciary relation. These phrases are used as convertible terms."). Further, the decision he cites as authority for the proposition that a "personal friendship" may support a constructive fraud action suggests a personal friendship would have that effect only when it was also a confidential relationship:

A confidential relationship may also arise because of personal friendship *and when one party knows the other is relying upon him in such a manner.* It is essential that there be a dominant and a subordinate party, and ... that the alleged subordinate party was *justified in relying upon a relationship of trust and confidence.*

*Grow v. Indiana Retired Teachers Community,* 149 Ind.App. 109, 114, 271 N.E.2d 140, 143 (1971) (emphasis supplied). Epperly's constructive fraud instruction correctly stated the law.

Johnson also argues Epperly's tendered instruction was properly refused as an incomplete and misleading statement of the law because the term "fiduciary relationship" was not defined. He relies on the general rule that phrases with particularized legal meaning or which are "words of art" require definition when used in jury instructions. *Baller by Baller v. Corle,* 490 N.E.2d 382, 386 (Ind.Ct.App. 1986). Most of the decisions that have applied that rule do not involve situations where a tendered instruction was refused for failure to define a term of art, but rather involve situations where an instruction was given and the trial court refused

to define such terms. "It is generally error for a *trial court to refuse to define* in its instructions technical and legal phrases relevant to material issues of a lawsuit *if it is properly requested to do so."* *Hoosier Ins. Co. v. North South Trucking Supplies, Inc.,* 684 N.E.2d 1164, 1174 (Ind.Ct. App.1997) (emphasis supplied). Defining such terms has been called a "duty of the court," *Dawson v. Hummer,* 649 N.E.2d 653, 664 (Ind.Ct.App.1995), rather than a responsibility on the part of a litigant tendering an instruction. To the extent the refusal of Epperly's instruction was premised on Epperly's failure to include a definition of "fiduciary relationship" in the instruction, the refusal was improper.

### B. *Was the Instruction Supported by the Evidence?*

Voluminous evidence of Epperly's relationship with Johnson was presented at trial by both sides. Refusal of the instruction was error to the extent it was premised on absence of support by the evidence.

### C. *Was the Substance of the Instruction Covered by Other Instructions?*

The jury was provided a definition of constructive fraud that was silent regarding the required relationship of the parties, and was further provided with the instruction set forth above regarding Johnson's burden to prove "a duty existed between the parties by virtue of the relationship of the parties." (R. at 1474.) Epperly argues the substance of the instruction he tendered was not covered by the instructions the court gave, because the instruction that was given required only a showing of a "relationship" and not a "special" relationship of any kind. It is well established that a fiduciary or other "special" relationship must exist in order to support a constructive fraud action. *E.g., Wells v. Stone City Bank,* 691 N.E.2d 1246, 1251 (Ind.Ct.App.1998), *trans. denied.* No other instruction informed the jury that the relationship for which liability can be imposed is not just any relationship, but one where the par-

ties have fiduciary or other special duties to one another. The substance of Epperly's tendered instruction was not covered by the other instructions and it was error to refuse it on that basis.

### D. *Was Epperly Prejudiced by Refusal of the Instruction?*

■ Even if refusal of a tendered instruction is error, we will not reverse unless the failure to give the instruction substantially and adversely affected Epperly's substantial rights so as to likely have affected the result. *Miller v. Ryan,* 706 N.E.2d 244, 248 (Ind.Ct.App.1999), *trans. denied.* In *Miller,* we found a party was not prejudiced by the court's failure to give a requested instruction on an issue not argued by the other party and not supported by the evidence.

■ Here, by contrast, Epperly was prejudiced by the refusal of the instruction because the jury could have improperly found constructive fraud based on the business relationship between him and Johnson or because Johnson thought he and Epperly were friends. Much of the evidence presented at trial was not directly related to the Pine Ridge transaction but instead concerned the relationship between Epperly and Johnson in the Twisted Oaks transaction and their personal friendship during the time the two were working together on Twisted Oaks. Epperly notes that of thirty-two exhibits Johnson offered, twenty-nine were about Twisted Oaks.

Johnson argues there was no prejudice because the jury returned a general verdict, which we are to sustain if the evidence is sufficient to support any theory of liability. Because an actual fraud count was submitted to the jury and because the same compensatory and punitive damages would be available under either count, he argues no prejudice can be shown from the failure to properly instruct on the constructive fraud count. Johnson relies on *Dow Chem. Co. v. St. Vincent Hosp. and*

*Health Care Ctr., Inc.,* 553 N.E.2d 144, 148 (Ind.Ct.App.1990). That decision involved the giving of erroneous instructions rather than the refusal to give a correct one. The case went to trial on four theories of liability, and the trial court gave erroneous instructions on the implied warranty theory. We found the error was not prejudicial: "[T]he implied warranty theory was not the exclusive theory of liability because there were negligence and strict liability counts upon which the jury could have found for [the plaintiff]." *Id.* However, we also noted that the defendant Dow had "not taken issue with the negligence and strict liability theories upon which the general verdict could be sustained." *Id.* at 149.

Such is not the case here. Epperly mounted a vigorous defense on all the theories Johnson asserted at trial. In light of the disproportionate amount of evidence before the jury of a personal and business relationship between Epperly and Johnson, and the trial court's failure to instruct the jury concerning the nature of the relationship required to support a constructive fraud action, we find that Epperly was prejudiced by the refusal of his tendered instruction.

### 5. *Constructive Fraud*

The evidence before the jury did not support at least two elements of Johnson's constructive fraud claim. First, there was no material misrepresentation of past or existing fact, and second, Epperly's relationship with Johnson was not one that gave rise to a duty of candor with regard to the Pine Ridge transaction.

■ Johnson's constructive fraud complaint alleges that Epperly's misrepresentation was his oral "promise to convey to [Johnson] a 25% interest in the various entities which would own, operate, and manage [Pine Ridge]." (R. at 416.) This representation was a representation as to future action or conduct,[6] and thus cannot

---

**6.** While an action for actual fraud must be based on a misrepresentation of past or existing fact, *Wells,* 691 N.E.2d at 1250, we have

recognized that a representation regarding future conduct can, in some situations, give rise

serve as a basis for a constructive fraud verdict.

 Second, the evidence did not support a finding that Epperly and Johnson had the kind of relationship that could support a constructive fraud claim. Such a claim may be supported by a breach of a legal or equitable duty in the context of a fiduciary relationship, *Sanders v. Townsend,* 582 N.E.2d 355, 358 (Ind.1991), but, as Epperly's tendered instruction correctly noted, such a relationship is not the only basis for such a claim. Epperly notes that a confidential relationship does not, without more, arise from a contractual relationship or a friendship, and that Epperly was not in a dominant position with regard to Johnson in their business dealings concerning Pine Ridge.

 Johnson would find a fiduciary duty by virtue of the parties' prior business relationships. When the Pine Ridge representations at issue were made, Johnson and Epperly were two of six shareholders in Beverly Golf Management, which had been formed to manage the final construction and opening of Twisted Oaks. Shareholders in a closely held corporation generally stand in a fiduciary relationship to each other. *W & W Equip. Co., Inc. v. Mink,* 568 N.E.2d 564, 570 (Ind.Ct.App. 1991). However, that relationship does not necessarily extend beyond matters that do not "affect the general well-being of the corporation." *See Fleetwood Corp. v. Mirich,* 404 N.E.2d 38, 44 (Ind.Ct.App. 1980) (where director sells his shares or buys stock from other shareholders, and such sale does not affect the well-being of the corporation, he owes no fiduciary duty to disclose to other shareholders informa-

tion he has about the value of the stock). The fiduciary duty inherent in the parties' relationship as Beverly Golf shareholders did not extend to the Pine Ridge transaction.

Johnson also asserts a jury could properly find a fiduciary duty arising from other aspects of the Epperly and Johnson relationship. He relies on *Knauf Fiber Glass, GmbH v. Stein,* 615 N.E.2d 115, 124 (Ind.Ct.App.1993), *aff'd in part, rev'd in part on other grounds,* 622 N.E.2d 163 (Ind.1993), where we found evidence to support the jury's determination there was a fiduciary relationship between two businesses. The business relationship between the two parties was so close and intertwined that a witness called one party, a trucking company, the other party's "private fleet." Another witness testified "he had never seen such a close and special relationship between a shipper and a carrier." *Id.* There was also testimony that in twenty years in the trucking industry, the witness had never known a company to loan money to one of its carriers as one party did here. Because of the nature of the relationship, we determined the parties were not operating at arm's length. *Id.*

We further found that Knauf gained an advantage at the trucking company's expense when it represented that it would have increased loads for the trucking company to haul and that the trucking company incurred debt in insuring there would be adequate trucks to handle the increased load. Johnson argues that he, like the trucking company, "agreed to do a second similar transaction based upon a prior positive experience with the defendant," (Br. of Appellee at 25); thus, there was a relationship sufficient to support the constructive fraud verdict.[7] The facts before the

to constructive fraud. *Id.; see also Farrington v. Allsop,* 670 N.E.2d 106, 109 (Ind.Ct. App.1996). However, the jury in the case before us was instructed it must find the constructive fraud was based on a misrepresentation of past or existing fact, (R. at 1474), suggesting its general verdict for Johnson and award of punitive damages must have been premised on actual, and not constructive, fraud.

7. Johnson also argues on appeal, without explanation or authority, that Epperly had a dominant position in the relationship: "Epperly's last minute request for 'a personal favor' from Johnson, can only be characterized as an exploitation of the dominant position Epperly had created over Johnson.... It is difficult to imagine a more dominant position." (Br. of Appellee at 25.) Shortly before trial, however, in his Motion in Opposition to Defendant's Motion to Bifurcate Tri-

jury did not demonstrate a relationship analogous to that of Knauf and Stein, and we decline to hold that a positive business experience, without more, necessarily gives rise to fiduciary obligations in future transactions between the same parties.

### 6. *The Award of Punitive Damages*

Because the evidence does not support a finding of fraud independent from Epperly's misrepresentation of his reason for breaching the oral contract with Johnson, and because Epperly and Johnson did not have a confidential relationship in connection with the Pine Ridge transaction sufficient to support a constructive fraud verdict, the award of punitive damages against Epperly was error. Before punitive damages may be allowed in a breach of contract action, there must be not only a breach, but also conduct on the part of the breaching party that independently establishes the elements of a common-law tort. *Indiana & Mich. Elec.*, 507 N.E.2d at 613. The evidence before the jury did not independently establish the elements of either fraud or constructive fraud. As a result, the punitive damages verdict was error.

### CONCLUSION

We affirm the judgment against Epperly for breach of his oral agreement to subsequently enter into a partnership involving Johnson and the compensatory damages arising therefrom. Further, we reverse the award of punitive damages, as the evidence did not establish actual fraud or constructive fraud.

We affirm in part and reverse in part.

DARDEN, J., and BROOK, J., concur.

al, Johnson asserted there was equal bargaining power: "Both Johnson and Epperly are wealthy businessmen. This is not a case where the 'little guy' plaintiff claims he was taken advantage of by a sophisticated, wealthy defendant." (R. at 1379.)