**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 10 2014, 6:33 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STACY R. ULIANA**
Bargersville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

PEDRO VICENTE,                              )
                                           )
    Appellant-Defendant,                   )
                                           )
       vs.                                )    No. 12A04-1403-CR-133
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.                    )

APPEAL FROM THE CLINTON CIRCUIT COURT
The Honorable Bradley K. Mohler, Judge
Cause No. 12C01-1203-FA-219

**December 10, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Pedro Vicente appeals his conviction for Class A felony child molesting. We affirm.

## Issues

The issues raised by Vicente are:

I.      whether the trial court properly denied his motion to strike two jurors for cause; and

II.     whether the trial court properly instructed the jury regarding the definition of an "object" for purposes of child molesting by deviate sexual conduct.

## Facts

We need not relate the graphic details of the crime. It suffices to say that Vicente frequently cared for nine-year-old J.M., who has severe mental and physical disabilities. One evening, shortly after J.M. had been left in Vicente's exclusive care for a period of time, J.M.'s mother found a large amount of blood in her diaper. After J.M. was taken to the hospital, it was discovered that she had sustained severe trauma to her vagina. The State charged Vicente in Clinton County with one count of Class A felony child molesting. The information alleged that Vicente performed the molestation by either "sexual intercourse or deviate sexual conduct . . . ." App. p. 16.

During voir dire for Vicente's jury trial, one prospective juror, A.H., was questioned by defense counsel as follows:

> Q:     Okay. So are you suggesting then that—that you could not sit impartially in this type of trial just because of the nature of the charges?
>
> A:     Yes.

Q: And you're saying that for sure?

A: Yes.

Tr. p. 111. A second prospective juror, B.A., noted that he has a daughter with a developmental disability and said, "I think he's guilty already." Id. at 103. B.A. also said that he did not think he could be an impartial juror and that he would be "heavily" biased in favor of the State. Id. at 113.

After these responses from A.H. and B.A., Vicente challenged them for cause. Before ruling on this motion, the trial court asked the jury pool en masse whether there was anyone who believed they would be unable to follow the court's instructions. A.H. and B.A. did not raise their hands; one person did raise his hand and said he would be unable to follow instructions, and he was dismissed for cause. After A.H. and B.A. failed to raise their hands in response to the trial court's question regarding inability to follow instructions, the trial court denied Vicente's motion to remove them for cause. Vicente then used two of his ten peremptory challenges to remove A.H. and B.A. from the jury panel and used the remaining eight peremptories on other prospective jurors. Due to challenges by the State and Vicente and the relatively small size of the jury pool, the trial court was only able to seat twelve regular jurors, and it could not seat an alternate. After the jury was selected, defense counsel stated, "The jury is acceptable to the defense Judge." Id. at 145. Defense counsel did not say that he was forced to accept a juror he did not want to accept because of having to use peremptory challenges to remove A.H. and B.A.

During Vicente's trial, the State presented evidence that J.M.'s vagina had sustained severe trauma from penetration of some kind. However, the State was unable to present

3

definitive proof as to whether her vagina had been penetrated by a penis or by some other object, i.e. by deviate sexual conduct. An expert for the State testified that the injuries to J.M.'s vagina could have been caused by either an adult male's penis or an adult's fingers. The State tendered a proposed final instruction giving the then-statutory definition of deviate sexual conduct "as meaning an act involving a sex organ of one person and the mouth or anus of another person, or, the penetration of the sex organ or anus of a person by an object." App. p. 137. It also tendered a proposed instruction stating, "When deviate sexual conduct is charged alleging the penetration of the sex organ or anus of a person by an object, the law holds that a finger is an object." Id. at 138. Vicente objected to this instruction, but part of the objection was noted as "[i]ndiscernible" by the court reporter. Tr. p. 469. The trial court overruled Vicente's objection and gave the instruction.

The jury found Vicente guilty as charged, and the trial court sentenced him accordingly. He now appeals.

**Analysis**

*I. Voir Dire*

Vicente first contests the trial court's denial of his challenge for cause to prospective jurors A.H. and B.A. He contends they demonstrated clear bias against him and unequivocally indicated that they could not be impartial jurors. He also argues that the trial court's attempt to rehabilitate A.H. and B.A. by asking the juror pool en masse whether they could follow the court's instructions—and A.H. and B.A.'s failure to respond to that question—was ineffective. Additionally, Vicente notes that he utilized two peremptory

4

challenges to remove A.H. and B.A. from the juror pool and used all ten of the peremptory challenges he had been allotted.

We conclude that we need not address the merits of whether the trial court erroneously denied Vicente's challenge for cause to A.H. and B.A. Under clear Indiana precedent, in order to obtain reversal of a conviction based on a claim of error in a trial court's denial of a juror challenge for cause, two things must occur. First, a defendant must exhaust all of his or her peremptory challenges if a challenge for cause is denied. Oswalt v. State, No. 35S02-1401-CR-10, slip op. at 5 (Ind. Oct. 22, 2014).[1] Second, a defendant must show that an incompetent or objectionable juror served on the jury as a result of a trial court's erroneous rejection of a for-cause challenge. Id. "An 'incompetent' juror is one who is removable for cause, while an 'objectionable' juror is one who is not removable for cause but whom the party wishes to strike." Whiting v. State, 969 N.E.2d 24, 30 n.7 (Ind. 2012).

The State concedes that Vicente satisfied the exhaustion rule. It argues, however, that Vicente failed to show that an incompetent or objectionable juror served on the jury. We agree. In Oswalt, although the court relaxed the exhaustion rule, it did not relax the rule requiring a party to demonstrate that an incompetent or objectionable juror served on the jury. Rather, it restated the longstanding rule that "'even where a defendant preserves a claim by striking the challenged juror peremptorily, reversible error occurs only where

---

[1] In Oswalt, our supreme court clarified that a party may satisfy the exhaustion rule by using its final peremptory challenge on either an objectionable or incompetent juror. In other words, so long as a party uses all of its peremptory challenges, the party does not have to use the last peremptory challenge on a juror the party believes should have been removed for cause.

5

the defendant exhausts all peremptories and is forced to accept either an incompetent or an objectionable juror.'" Oswalt, slip op. at 7 (quoting Whiting, 969 N.E.2d at 30). Without such a showing, a party has not established prejudice resulting from a trial court's denial of a for-cause challenge. Id. at 8.

In Oswalt, the defendant's trial counsel stated on the record that a juror was being seated whom he found objectionable but was unable to strike peremptorily because he had been forced to use a peremptory challenge on a juror he believed should have been removed for cause. Id. Here, there is no such record. Vicente's trial counsel never made any statement indicating that he was being forced to agree to either an objectionable or incompetent juror as a result of having to use peremptory challenges to remove A.H. and B.A. To the contrary, trial counsel stated without qualification that the seated jury was "acceptable to the defense . . . ." Tr. p. 145. Even if we were to assume the trial court erred in refusing to remove A.H. and B.A. from the jury pool for cause, Vicente has failed to establish that he was prejudiced by that ruling. There is no evidence in the record that trial counsel for Vicente was required to seat a juror he did not want to seat as a result of having been forced to use two peremptory challenges on persons who should have been removed for cause.

Vicente argues that we should create an exception in this case to the requirement that a party show that an objectionable or incompetent juror served on a jury as a result of a trial court's denial of a for-cause challenge. He notes that, because of the limited jury pool in a less-populous county and because the highly inflammatory nature of the charge against him resulted in many prospective jurors being removed for various reasons, the

6

trial court was left with the bare minimum number of persons to serve on a twelve-person jury, with no person even to spare as an alternate.[2]  Vicente contends, "when a court requires the defendant to use his peremptory strikes curatively, the Indiana Jury Rules are not being applied equally, fairly, or constitutionally."  Appellant's Br. p. 11.

We are not in a position to create an exception to a bright-line rule established by our supreme court.  To the contrary, we observe that in Whiting, the court refused to allow criminal defendants to argue fundamental error in the event he or she failed to comply with the exhaustion rule after a for-cause challenge has been denied.  See Whiting, 969 N.E.2d at 34.  Additionally, the court noted various policy reasons for requiring compliance with the exhaustion rule, including the interest in finality and the difficulty of an appellate court second-guessing a trial court's ruling on a for-cause challenge when a defendant fails to take all available steps to exclude that juror.  See id. at 30-31.  The court also held that, even if an erroneous denial of a for-cause challenge was "structural" error potentially impacting the Sixth Amendment right to an impartial jury, such claims can be forfeited through procedural default.  See id. at 31-32 (citing Yakus v. United States, 321 U.S. 414, 64 S. Ct. 660 (1944), and Ross v. Oklahoma, 487 U.S. 81, 108 S. Ct. 2273 (1988)).  The court saw no difference between civil and criminal trials in this regard.  Id. at 33.  In fact, both the Oswalt and Whiting opinions relied in large part upon the court's earlier decision in Merritt v. Evansville-Vanderburgh School Corporation, 765 N.E.2d 1232 (Ind. 2002).

---

[2] Vicente makes no argument that the trial court was required to seat an alternate juror.  See Ind. Jury Rule 16(a) (providing that in criminal cases, "The court shall determine the number of alternate jurors to be seated.").

7

The Whiting opinion further stated, "that a preserved error is reversible only if the defendant shows that at least an objectionable juror served simply acknowledges that a criminal defendant is entitled to a fair trial, not a perfect one." Id. at 33 n.10.

Although Whiting specifically addressed failure to comply with the exhaustion rule, and not failure to show that an objectionable or incompetent juror served on a jury, we believe that its emphasis upon the need to properly preserve a claim of erroneous denial of a for-cause challenge applies here as well. Trial counsel failed to give any indication that someone served on the jury whom he did not want to serve. To the contrary, counsel expressly indicated to the trial court that the jury was "acceptable." Tr. p. 145. A.H. and B.A. were not on the jury. It is difficult, if not impossible, to assess on this record how Vicente supposedly was prejudiced by the denial of his for-cause challenges. Given that, we conclude it would be inappropriate to reverse Vicente's conviction based on the mere speculation that he might have been prejudiced. We do not opine on the merits of the denial of Vicente's for-cause challenges.

## II. Jury Instruction

Vicente also contends the trial court erred in instructing the jury, "When deviate sexual conduct is charged alleging the penetration of the sex organ or anus of a person by an object, the law holds that a finger is an object." Id. at 138. Vicente argues that this instruction violates the rule set forth by our supreme court prohibiting jury instructions "that unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case . . . ." Ludy v. State, 784 N.E.2d 459, 461 (Ind. 2003); Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001). He also argues that, even if the language is a correct statement of the

8

law derived from appellate opinions, it is not necessarily proper to utilize language in such opinions as jury instructions. See Ludy, 784 N.E.2d at 462.

The State first responds that Vicente failed to preserve his claim of error on this point. A party wishing to preserve a claim of instructional error for appeal must identify the specific grounds for objection at trial. Kane v. State, 976 N.E.2d 1228, 1231 (Ind. 2012). A specific and timely objection is required so that a trial court has the opportunity to avoid reversible error, or a miscarriage of justice, or wasting time and resources. Id.; see also Ind. Crim. Rule 8(B) ("No error with respect to the giving of instructions shall be available as a cause for new trial or on appeal, except upon the specific objections made as above required."); Ind. Trial Rule 51(C); ("No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.").

At trial, when the State proposed the giving of this instruction, trial counsel stated, "Just for the record, I'll make an objection. I have not—because I have not had a chance to review the case" the State had cited in support of the instruction. Tr. p. 468. Trial counsel continued, "I've never seen that worded that way um, in jury instructions before. I don't believe it's part of a Pattern. Um, and um, but I'll leave that to the Court's discretion Your Honor." Id. After the trial court briefly allowed trial counsel to review the case, trial counsel made a comment noted as "[i]ndiscernible" in the transcript. Id. at 469. The trial court then stated, "I believe it is yes. Okay. And so we'll uh, over defense objection I will give uh, State's proposed final instruction number one." Id.

9

Here, although some of what trial counsel said was not adequately recorded, there is no indication that he made any specific objection on grounds related to the rule in Ludy and Dill. There is no statement by the trial court indicating that it considered whether the instruction violated the Ludy/Dill rule, as likely would have occurred had such a specific objection been made. Cf. Kane, 976 N.E.2d at 1231-32 (holding defendant sufficiently preserved claim of instructional error where record revealed trial court had considered whether proposed instruction was a correct statement of the law). The only grounds for objection possibly indicated in the transcript here was that the instruction was not a correct statement of the law, but Vicente does not make that argument on appeal. We doubt that this claim of instructional error was adequately preserved.

But, because part of trial counsel's statements to the trial court were inaudible, we will give Vicente the benefit of the doubt and address his argument on the merits. When reviewing a trial court's decision to give or refuse to give a proposed instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there was evidence presented at trial that would support giving the instruction; and (3) whether the substance of the instruction was covered by other given instructions. Id. at 1230-31. Generally, we review the way in which a trial court has instructed a jury for an abuse of discretion. Id. at 1231.[3]

---

[3] Whether an instruction correctly states the law is a question of law that appellate courts review de novo. Kane, 976 N.E.2d at 1231. The decisions in Ludy and Dill did not state the standard of review that was used in finding the instructions in those cases to be erroneous. In this case, Vicente concedes that the challenged instruction was a correct statement of the law and argues only that the trial court abused its discretion.

In <u>Dill</u>, our supreme court disapproved of an instruction telling the jury that it could consider the flight of a person after the commission of a crime, though not proof of guilt, as evidence of consciousness of guilt. <u>Dill</u>, 741 N.E.2d at 1231. The court first stated that the instruction was ambiguous and confusing for informing the jury that flight could be evidence of consciousness of guilt, but not proof of guilt itself. <u>Id.</u> at 1232. "The trial court should refuse ambiguous and confusing instructions." <u>Id.</u> Next, the court stated that trial courts should not give discrete instructions that highlight or emphasize one particular facet of the evidence. <u>Id.</u> Finally, the court stated that the instruction was misleading because it emphasized the possible inculpatory inferences to be derived from a defendant's flight while omitting consideration of contrary, innocent reasons for fleeing. <u>Id.</u>

In <u>Ludy</u>, the court rejected an instruction that stated, "A conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." <u>Ludy</u>, 784 N.E.2d at 460. The court concluded that this instruction unduly emphasized and focused the jury's attention upon a single witness's testimony. <u>Id.</u> at 461. It also found that this language stated an appellate standard of review for sufficiency of the evidence that was inappropriate to give to a jury. <u>Id.</u> "'The mere fact that certain language or expression [is] used in the opinions of this Court to reach its final conclusion does not make it proper language for instructions to a jury.'" <u>Id.</u> at 462 (quoting <u>Drollinger v. State</u>, 274 Ind. 5, 25, 408 N.E.2d 1228, 1241 (1980)). The court also concluded that the word "uncorroborated" was a legal term, and leaving it undefined would be potentially confusing, misleading, or of dubious efficacy to a lay juror. <u>Id.</u>

11

We conclude that the giving of the challenged instruction here did not violate <u>Dill</u> or <u>Ludy</u>. The instructions in those cases intruded upon the jury's weighing <u>all</u> of the evidence presented during trial by highlighting one evidentiary fact or witness over others. Vicente argues that the instruction here unduly emphasized the State's theory that he could have penetrated J.M.'s vagina with his finger as opposed to his penis, but we disagree. Rather, the instruction merely provided the jury with a settled legal definition of the word "object" as found in the deviate sexual conduct statute at the time of trial. Trial courts have discretion to give instructions that include definitions of words or phrases. <u>Erickson v. State</u>, 439 N.E.2d 579, 580 (Ind. 1982). In fact, "[w]hen words of a technical or legal meaning not normally understood by the jurors are used in an instruction, other instructions defining the terms should be given by the trial court." <u>Id.</u>; <u>see also</u> <u>Epperly v. Johnson</u>, 734 N.E.2d 1066, 1074 (Ind. Ct. App. 2000) (stating general rule that "phrases with particularized legal meaning or which are 'words of art' require definition when used in jury instructions.").

Vicente was alleged to have molested J.M. by either sexual intercourse or deviate sexual conduct. <u>See</u> Ind. Code § 35-42-4-3(a) (2013). Deviate sexual conduct was defined as "an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." I.C. § 35-41-1-9 (2013). "Object" is not defined by statute. However, our supreme court has held that a finger is an "object" under the law, because "it is unlikely that the legislature would criminalize sexual assaults committed by means of sex organ, mouth, or inanimate object, yet condone such assaults if committed by means of a finger or hand." <u>Stewart v. State</u>,

12

555 N.E.2d 121, 126 (Ind. 1990), <u>overruled on other grounds by</u> <u>Lannan v. State</u>, 600 N.E.2d 1334 (Ind. 1992). The <u>Stewart</u> opinion rejected the defendant's argument that, according to standard English definitions, the word "object" could only refer to inanimate objects. The trial court's instruction here was based upon <u>Stewart</u> and following cases.

We conclude that the instruction, rather than being misleading or confusing or ambiguous, simply clarified the legal definition of the word "object." Additionally, a finger is, legally speaking, an "object." Following the decision in <u>Stewart</u>, there is no gray area, although without <u>Stewart</u>'s definition some laypersons might be confused as to whether a finger is an "object," as reflected by the defendant's argument in that case. A defendant is not entitled to rely on a jury's confusion regarding a word or ignorance of settled legal definitions as a basis for acquittal. By contrast, flight may or may not be evidence of consciousness of guilt, and uncorroborated testimony by a single witness may or may not be sufficient evidence of guilt, at a jury's discretion. The instructions in <u>Dill</u> and <u>Ludy</u> had the potential to focus jury attention on such evidence to the exclusion of other evidence that might point toward a not guilty verdict. Additionally, although <u>Ludy</u> cautioned that language in appellate opinions should not necessarily be used in jury instructions, there is no blanket prohibition against such use. <u>Gravens v. State</u>, 836 N.E.2d 490, 494 (Ind. Ct. App. 2005), <u>trans. denied</u>. In sum, we believe the trial court acted within its discretion when it gave a jury instruction providing a settled legal definition for the word "object."

**Conclusion**

Vicente has not shown that he was prejudiced by the trial court's denial of his for-cause juror challenges, and the trial court did not abuse its discretion in instructing the jury. We affirm.

Affirmed.

BRADFORD, J., and BROWN, J., concur.