# FOR PUBLICATION



FILED
Mar 03 2014, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**SHAUN T. OLSEN**
Olsen Campbell Ltd.
Merrillville, Indiana

ATTORNEY FOR APPELLEES:

**KATHERINE A. BROWN-HENRY**
Cline Farrell Christie & Lee, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JOSEPH and M. CARMEN WYSOCKI,          )
                                        )
    Appellants - Plaintiffs,           )
                                        )
        vs.                       )     No. 45A03-1309-CT-385
                                        )
BARBARA A. and WILLIAM T. JOHNSON,     )
both individually and as Trustees of the )
BARBARA A. JOHNSON LIVING TRUST,       )
                                        )
    Appellee.                          )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Gerald N. Svetanoff, Judge
Cause No. 45D04-0805-CT-92

**March 3, 2014**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Joseph and M. Carmen Wysocki appeal the denial of their request for attorney fees and additional damages under Indiana's Crime Victims Relief Act, i.e., Ind. Code Ann. § 34-24-3-1 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.) (the CVRA).

We affirm.

This is the second time litigation between these parties concerning the same operative facts has come before our appellate courts. Those facts concern the 2006 sale of a home from Barbara A. Johnson, William T. Johnson, and the Barbara A. Johnson Living Trust Dated 12-17-1996 (collectively, the Johnsons) to the Wysockis. Our Supreme Court set out those facts as follows:

> In 1973, William and Barbara Johnson purchased a single-family home in Lake County, Indiana. In 1996, the Johnsons established the Barbara A. Johnson Living Trust and deeded the property to the Trust. They lived in the home continually, with William Johnson doing most renovation work that arose.
>
> In 2006, the Trust sold the property to Joseph and M. Carmen Wysocki for $235,000. Prior to finalizing the purchase agreement, Barbara Johnson—in her position as trustee—executed a Seller's Residential Real Estate Sales Disclosure Form in which she averred that there were no violations of applicable building codes, that all work had been done with a building permit when required, that there were no foundational or structural problems, and that there were no issues with moisture, water, or roof leakage. The Wysockis acknowledged and signed the Disclosure Form on July 11, 2006. The next day they signed a purchase agreement for the property, electing in that agreement to obtain their own independent inspection before closing.
>
> The Wysockis' independent inspection noted no roof leaks, major deficiencies, electrical issues, or structural defects. However, it was limited to "readily accessible areas of the building" and "visual observations of apparent conditions existing only at the time of the inspections." (App. at 84.) "Latent and concealed defects and deficiencies" were excluded. (App. at 84.) The

2

Wysockis then waived any further independent inspections and agreed to accept the property in the "as is" condition as reported in the inspection. Closing occurred on July 28, 2006.

Shortly after taking possession, the Wysockis began noticing issues with the property. At the first substantial rain, they discovered water leaking into the garage and cascading down the wall of their front porch. That fall, when they closed the swimming pool for the season, they discovered electrical issues with the pool system. An electrical inspector for the City of Crown Point found numerous electrical code violations in the wiring to the pool, and the repair necessitated going under the property's screened-in rear patio. While under the patio, the Wysockis discovered that the patio's structural supports appeared to be resting on bare earth.

The Wysockis then hired a consulting engineer to examine the property. He noted a broken or deflected beam in the front porch that needed to be replaced and that the roof intersection of the porch and garage did not come together properly, with a number of defects that would cause water leakage from that point. Additionally, he noted defects in the attic above the garage—including an improperly cut ceiling joist and water damage directly below the improper roof intersection. Below the screened-in patio, the engineer found that many of the deck posts were resting on the ground and beginning to decay; others did not reach the ground at all and were instead resting on shims of concrete blocks and other materials. The Wysockis spent $1200 to repair the electrical service to the pool, $3494.74 to repair the roof intersection, and had estimates of $2786.86 to repair the broken front beam and $6324.54 to repair the patio supports.

The Wysockis filed suit against the Johnsons individually and as trustees of the Trust. Count I of their complaint alleged fraud arising from the Johnsons' failure to disclose the defects discovered by the Wysockis after closing. Count II alleged a breach of contract or, alternatively, conversion arising out of the Johnsons' removal of pump systems connected to the pool and several landscaping ponds. They sought compensatory damages and pursuant to the Indiana Crime Victims Relief Statute, treble damages, attorney fees, costs, and interest.

The trial court granted summary judgment in favor of the Johnsons with respect to Count II of the Wysockis' complaint. A bench trial was held on Count I, with the trial court finding the Johnsons liable for the defective electrical service to the pool, the roofing above the front porch, the front porch beam, and the screened-in patio supports. It awarded damages in the amount of

$13,805.95, but denied their request for relief under the Indiana Crime Victims Relief Statute. The Wysockis filed a motion to correct errors seeking an additional $13,500 in attorney and expert fees. The trial court denied their motion and both parties appealed.

The Court of Appeals, in an unpublished memorandum decision, affirmed in part and reversed in part. *Johnson v. Wysocki,* 2012 WL 3067898 (Ind. Ct. App. July 30, 2012). It found that the Wysockis failed to show that the Johnsons had actual knowledge of the defects and so reversed the trial court's judgment in favor of the Wysockis. *Id.* at *5. It therefore also affirmed the trial court's denial of relief under the Indiana Crime Victims Relief Statute. *Id.*

*Johnson v. Wysocki*, 990 N.E.2d 456, 459-60 (Ind. 2013).

Our Supreme Court reversed, holding that Indiana's Disclosure Statutes, i.e., Ind. Code Ann. § 32-21-5 et seq. (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.), "abrogated the common law principles originally set forth in [*Cagney v. Cuson*, 77 Ind 494 (1881)]. In such transactions the seller may be liable for fraudulent misrepresentations made on the Disclosure Form when he or she had actual knowledge that the representation was false at the time he or she completed the form." *Johnson v. Wysocki*, 990 N.E.2d at 466. Further, the Court concluded that the trial court applied the wrong legal standard in determining whether the Johnsons knew about the defects in question. The Disclosure Statutes require actual knowledge that the representations in question were false at the time they were made. The trial court here, however, found that the Johnsons were liable because those defects "should have been obvious to the Johnsons". *Id.* Accordingly, the Court remanded with instructions to reevaluate the Wysockis' fraudulent misrepresentation claim, which was premised upon the allegation that the Johnsons made false statements on the Sellers Residential Real Estate Disclosure Form, using the correct

4

legal standard.

This brings us to the current appeal. Upon remand, the trial court determined that the defects in question were clearly within the actual knowledge of the Johnsons at the time the disclosure form was completed, and therefore the court entered judgment in favor of the Wysockis with respect to the cost of performing the necessary repairs. On the other hand, the trial court denied the Wysockis' request for attorney fees and expert fees under the CVRA. This is the ruling that the Wysockis appeal. In a nutshell, the Wysockis urge this court to create "a categorical 'bright line' rule that the Crime Victims Relief Act is applicable in instances where a seller is held liable [for] false or incomplete statements in their disclosure forms [.]" *Appellant's Brief* at 24. We will discuss only the request for attorney fees, but our conclusion applies with equal force to other fees recoverable under the CVRA.

In deciding whether the trial court erred in denying the Wysockis' request for attorney fees, we are mindful that Indiana generally follows the "American Rule", whereby parties pay their own attorney fees. Nonetheless, attorney fees are recoverable if there is an agreement between the parties to that effect, or where attorney fees are authorized by statute or rule. *Estate of Kappel v. Kappel*, 979 N.E.2d 642 (Ind. Ct. App. 2012). Although a trial court's decision to grant attorney fees is generally reviewed for abuse of discretion, we apply a de novo standard of review with respect to any legal conclusions upon which the trial court based its decision. *Emergency Physicians of Indianapolis v. Pettit,* 714 N.E.2d 1111 (Ind. Ct. App. 1999), *adopted in relevant part, reversed in part,* 718 N.E.2d 753 (Ind. 1999). The Wysockis seek a ruling that attorney fees are recoverable under the CVRA whenever the

5

request is premised upon a violation of the Disclosure Statutes. This is a pure question of law, and therefore we apply a de novo standard of review.

We must construe the CVRA in order to determine whether it authorizes the Wysockis to recover attorney fees under the present circumstances. When construing any statute, our primary goal is to effectuate legislative intent. *Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146 (Ind. 2013). A "cardinal rule of statutory construction" is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 829 (Ind. 2011). We presume the legislature intended the statutory language to be applied logically and consistently with the statute's underlying policy and goals, and we avoid construing a statute in such a way as to create an absurd result. *Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146.

The Wysockis contend their request for fees is governed by Art. 24 of Title 34, which is entitled, "Civil Proceedings Related to Criminal Activities." Section 1 of Chapter 3 provides, in relevant part, as follows:

> If a person has an unpaid claim on a liability that is covered by IC 24-4.6-5 or suffers a pecuniary loss as a result of a violation of IC 35-43, IC 35-42-3-3, IC 35-42-3-4, or IC 35-45-9, the person may bring a civil action against the person who caused the loss for the following:
>
> > (1) An amount not to exceed three (3) times:
> > > (A) the actual damages of the person suffering the loss, in the case of a liability that is not covered by IC 24-4.6-5; or
> > > (B) the total pump price of the motor fuel received, in the case of a liability that is covered by IC 24-4.6-5.
>
> > (2) The costs of the action.
>
> > (3) A reasonable attorney's fee.

6

By its own terms, the CVRA applies to a loss that is "covered by" Ind. Code Ann. § 24-4.6-5 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.), which governs vehicle owner liability for motor fuel theft. This clearly does not apply here. The CVRA also applies to pecuniary losses resulting from violations of the following criminal statutes: Ind. Code Ann. § 35-42-3-3 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.) (criminal confinement); I.C. §35-42-3-4 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.) (interference with custody); Ind. Code Ann. § 35-43-5-0.1 – 5-20 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.) (forgery, fraud, and other deceptions); and Ind. Code Ann. §35-45-9-1 – 9-6 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.) (criminal gang control). These statutes set out certain criminal offenses, including fraud. For purposes of the CVRA, the Wysockis would have us equate the common-law tort of fraud with the criminal offense of fraud. We decline the invitation.

The five elements of common-law fraud include: 1) a false statement of past or existing material fact; 2) made with knowledge that it was false or made recklessly without knowledge of its truth or falsity; 3) made for the purpose of inducing the other party to act upon the statement; 4) upon which the other party justifiably relied and acted; 5) proximately resulting in injury to the other party. *Epperly v. Johnson*, 734 N.E.2d 1066 (Ind. Ct. App. 2000). In order to obtain a recovery under this theory, a plaintiff must prove the allegation by a preponderance of the evidence. *Ohio Farmers Ins. Co. v. Indiana Drywall & Acoustics, Inc.*, 970 N.E.2d 674 (Ind. Ct. App. 2012), *trans. granted, opinion vacated,* 976 N.E.2d 1234

(Ind. 2012), *trans. vacated, opinion reinstated*, 981 N.E.2d 548 (Ind. 2013), *trans. denied* (Jan. 28, 2013).

The Wysockis contend that the CVRA applies here because the Johnsons' actions constituted the offense of criminal deception, an offense defined in I.C. § 35-43-5 as one involving "Forgery, Fraud, and Other Deceptions". In order to obtain a conviction under this provision, the State would have been required to prove that the Johnsons (1) knowingly or intentionally (2) made false or misleading written statements (3) with the intent to obtain property. *See* I.C. § 35-43-5-3(a)(2) (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.). Of course, as with all crimes, the State would have had to prove its case beyond a reasonable doubt. *See Robinson v. State*, 780 N.E.2d 849 (Ind. Ct. App. 2002).

The foregoing reflects that the elements of common-law fraud and the criminal offense of fraud are different. So, too, is the burden of proof necessary to prove those two allegations. Thus, it cannot be said that authorization of attorney fees in the CVRA for victims of criminal offenses that can be categorized as fraud extends to the common-law tort of fraud. Simply put, in its current form, the CVRA authorizes certain fees only for victims of certain, specific criminal offenses, as well as for liability arising under I.C. § 24-4.6-5 et seq., which does not apply here. The Wysockis were not victims of the criminal offense of fraud because the Johnsons were not charged with that crime in relation to the sale of the house, much less convicted of it in a court of law. In the absence of such a conviction, the CVRA does not apply. Accordingly, the trial court did not err in denying the Wysockis'

request for attorney fees under its provisions.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.