# FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**KENT M. FRANDSEN**
**MICHAEL L. SCHULTZ**
Parr Richey Obremskey
Frandsen & Patterson LLP
Lebanon, Indiana

**KARL L. MULVANEY**
**NANA QUAY-SMITH**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF INDIANA:

**DONALD B. KITE, SR.**
Wuertz Law Office LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**DAVID K. HERZOG**
**JON LARAMORE**
**JANE DALL WILSON**
**KATRINA GOSSETT**
Faegre Baker Daniels LLP
Indianapolis, Indiana

**STANLEY E. KARON**
Karon Trial Law PA
Richfield, Minnesota

ATTORNEY FOR AMICUS CURIAE
INDIANA PATIENT'S COMPENSATION
FUND:

**MATTHEW W. CONNER**
**WADE D. FULFORD**
**BRYAN H. BABB**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SCI PROPANE, LLC; SOUTH CENTRAL INDIANA RURAL ELECTRIC MEMBERSHIP CORPORATION; RUSHSHELBY ENERGY RURAL ELECTRIC COOPERATIVE, INC., | ) ) ) ) | |
| Appellants/Defendants, | ) ) | |
| vs. | ) ) | No. 55A04-1211-PL-586 |
| COURTNEY FREDERICK, as Personal Representative of the Estate of Stephen Frederick, deceased, | ) ) ) ) ) | |
| Appellee/Plaintiff. | ) | |

**August 13, 2014**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

SCI Propane, LLC ("SCI"); South Central Indiana Rural Electric Membership Corporation ("SCI REMC"); and RushShelby Energy Rural Electric Cooperative, Inc. ("RushShelby Energy") (collectively, "the SCI Defendants") appeal the trial court's order requiring them to pay the attorney fees and litigation expenses of Courtney Frederick ("Courtney"), as Personal Representative of the Estate of Stephan Frederick, deceased ("The Estate"), resulting from the Estate's wrongful death claim.

The SCI Defendants argue that the General Wrongful Death Statute ("GWDS") does not allow recovery of attorney fees for decedents who are survived by dependents. Alternatively, they argue that the trial court erred in calculating attorney fees because it should have awarded the Estate only the amount of fees the Estate agreed to pay its counsel pursuant to a contingency fee agreement. The Estate cross-appeals the trial court's reduction of its recovery based on non-party fault and requests us to remand for a calculation and award of appellate attorney fees.

2

With regard to the SCI Defendants' appeal, we conclude that the trial court did not err in awarding the Estate attorney fees because, although the GWDS does not explicitly provide for the recovery of attorney fees, it does specify that damages are not limited to those enumerated in the statute. However, we conclude that the trial court abused its discretion in calculating its award of attorney fees because it should have limited the award to the Estate's actual losses, as governed by its contingency fee agreement with its counsel. We remand to the trial court to revise its award of attorney fees so that it is consistent with the contingency fee agreement. With regard to the Estate's cross-appeal, we conclude that the trial court did not err when it reduced its award of attorney fees according to fault allocation because its award of attorney fees was compensatory in nature and subject to Indiana's Comparative Fault Act. Finally, we decline to award the Estate appellate attorney fees.

We affirm in part, reverse in part, and remand.

## ISSUES

Appeal:

1. Whether the trial court erred in ordering the SCI Defendants to pay the Estate's attorney fees

2. Whether the trial court erred in calculating the Estate's attorney fees because the trial court did not limit the Estate's recovery to the amount specified in its contingency fee agreement with its counsel.

Cross-Appeal:

3. Whether the trial court erred when it reduced the Estate's recovery of attorney fees and litigation expenses based on allocation of party fault.

4. Whether the Estate may recover appellate attorney fees.

3

FACTS

SCI is a limited liability company that engages in the business of providing metered propane services. On October 16, 2003, SCI hired Midland-Impact, LLP ("Midland"), a business that engages in supplying liquid propane, to install and fill the propane tank of two of SCI's customers, William and Betty Kindle (collectively, "the Kindles"). While at the Kindles' house, a Midland representative tested the Kindles' propane system and determined that the gas-control valve for their water heater needed to be replaced. The Kindles replaced the valve with a new valve of the same model, but neither Midland nor SCI re-tested the system after the Kindles' repairs.

Early in the morning on May 13, 2004, a propane gas leak occurred in either the Kindles' home or their office—which was attached to the home—and caused a gas explosion and fire. The explosion injured four of the Kindles' family members who were staying in the home (collectively, "the Personal Injury Plaintiffs") and killed another family member, Stephan Frederick ("Frederick"). Frederick's minor son and his wife, Courtney, were injured in the explosion but survived. Courtney is now the Personal Representative of the Estate. After the explosion, the gas-control valve was identified as the likely source of the leak.

On June 3, 2004, the Personal Injury Plaintiffs and the Estate (collectively, "the Plaintiffs") engaged the law firm Baker & Daniels, now Faegre Baker Daniels, LLP ("FBD"), to represent them. The Plaintiffs and FBD signed a fee agreement in which FBD agreed to represent the Plaintiffs on a contingency basis in exchange for twenty-five

4

percent (25%) of any recovery collected by settlement before trial; thirty-three and one-third percent (33⅓%) of any recovery collected after the commencement of trial and without an appeal; and forty percent (40%) of any recovery after the trial and in the event of an appeal. In addition to these fees, the Plaintiffs agreed to pay any disbursement expenses FBD incurred, including: "expert witness fees, deposition costs, filing fees, long distance telephone charges, photocopying costs, mileage, and any other cost or expense incurred and paid [] on [a Plaintiff's] behalf or otherwise connected with the representation." (Estate's App. 312).[1]

Subsequently, on October 24, 2005, the Plaintiffs filed a wrongful death and personal injury action against SCI, Midland, and White-Rogers ("White Rogers"), the company that had designed and manufactured the gas-control valve in the Kindles' water heater.[2] Then, on January 16, 2008 and April 1, 2008, the Plaintiffs filed motions to amend their complaint to add further parties as defendants. These parties included SCI Services, LLC, a limited liability company that owned one half of SCI; SCI REMC; RSE Services, Inc. ("RSE Services"), a corporation that owned one half of SCI and was a subsidiary of RushShelby Energy; and RushShelby Energy, an agricultural cooperative (collectively, "the Defendants").[3] The trial court granted the Plaintiffs' motions to amend their complaint on April 28, 2008. The Defendants filed an answer denying fault and

---

[1] The Estate and the SCI Defendants each submitted an Appendix. To distinguish between the two, we will refer to the Estate's Appendix as "Estate's App.," and we will refer to the SCI Defendants' Appendix as "SCI Defendants' App."

[2] White-Rogers is a division of Emerson Electric Co.

[3] Throughout this case, the Plaintiffs have added and dismissed defendants. To incorporate these changes, our identifier "the Defendants" will apply to all of the party defendants that are a part of the case at the particular point in time when we use the identifier.

5

asserting nonparty fault by the Kindles for negligently installing and maintaining the propane system.

Prior to trial, the Plaintiffs settled their claims against Midland for $2,400,000 and dismissed it from the suit.[4]  In response, the remaining defendants amended their answer to assert Midland's nonparty fault.  The Defendants also dismissed their claims against Betty Kindle but reserved the right to present evidence of the nonparty fault of William Kindle.

Subsequently, all of the parties agreed to bifurcate the trial on fault and damages.  The trial court held a jury trial on the issue of liability for three weeks in April 2010, starting on April 7, 2010 and ending on April 27, 2010.  At the conclusion of the trial, the jury's verdict assigned seventeen and a half percent (17½%) of fault each to SCI REMC and RushShelby Energy, thirty percent (30%) fault to Midland, and thirty-five percent (35%) fault to William Kindle.  The jury found that the remaining defendants were not at fault.

On May 6, 2006, the Plaintiffs filed a motion to correct error, requesting that the trial court transfer Midland's 30% allocation of fault to SCI on the grounds that the jury had been instructed that SCI's duties to warn and to safely install gas service were non-delegable.  The Plaintiffs argued that the only evidence before the jury regarding Midland related to Midland's failure to warn and improper installation of the propane system, both of which were the non-delegable duties of SCI.  In August of 2010, the trial court granted this motion and transferred Midland's fault allocation to SCI.  In aggregate, then, the trial

[4] The Estate's share of this settlement totaled $624,000.

6

court assigned SCI, SCI REMC, and RushShelby Energy—the SCI Defendants—sixty-five percent (65%) fault and William Kindle thirty-five percent (35%) fault. The SCI Defendants sought permission to file a discretionary interlocutory appeal of the trial court's decision to transfer Midland's fault to SCI, but this Court declined to accept jurisdiction.

Thereafter, on August 25, 2011, the Estate filed a motion for partial summary judgment on its damages claim. It argued that the GWDS, codified at INDIANA CODE § 34-23-1-1, allowed recovery for attorney fees and litigation expenses. The Estate asked the trial court to make a determination on the issue, with the actual amount of recovery to be calculated at the end of the trial. The SCI Defendants filed a cross-motion for summary judgment, arguing that the GWDS did not allow for recovery of attorney fees and litigation expenses. On October 6, 2011, the trial court granted the Estate's motion and denied the SCI Defendants' cross-motion. With the consensus of the parties, the court also agreed to bifurcate the issue of attorney fees from the trial on damages.

From November 14-18, 2011, the trial court held a jury trial on the issue of damages. At the conclusion of the trial, the jury entered a verdict for the Plaintiffs in the amount of $27,037,425, and the trial court entered a judgment in accordance with this verdict. Because the SCI Defendants were only sixty-five percent (65%) at fault, their portion of the damages totaled $17,574,326.25. The Estate's share of this amount totaled $4,704,326. The Plaintiffs later settled with the SCI Defendants on the issue of damages,

excluding attorney fees, for a total of $13,950,000, and the Estate received either $3,734,415 or $3,734,160.26 of this amount.[5]

Thereafter, the SCI Defendants and the Estate filed trial briefs regarding the issue of attorney fees. The Estate argued that the trial court should calculate fees based on its counsels' normal hourly rates. In response, the SCI Defendants argued that the Plaintiffs' June 3, 2004 contingency fee agreement was controlling and that the trial court could not award Plaintiffs more than they had agreed to pay their counsel. On August 13, 2012, the trial court held a hearing on the issue, and on October 24, 2012, it issued an order finding that the fee agreement did not limit the Estate's recovery. Instead, the trial court held that, under the GWDS, the fee recovery should be based on a reasonableness standard. It reduced the overall fees and expenses according to the Estate's portion and the SCI Defendants' sixty-five percent (65%) allocation of fault and awarded the Estate $2,329,101.21 for recovery of its attorney fees and $195,874.55 for its expenses. In sum, the trial court entered judgment against the SCI Defendants in the amount of $2,524,975.76.

The SCI Defendants now appeal. The Defense Trial Counsel of Indiana, pursuant to Indiana Appellate Rule 41, has filed an appearance in this case as *amicus curiae* and has filed an appellate brief substantively in line with the SCI Defendants. The Indiana

---

[5] This appeal only concerns the Estate's award. The amount of the Estate's actual recovery after the settlement is not clear because the trial court listed two different amounts in its findings of fact. In finding number twenty-nine, the trial court includes a chart, which states that the Estate's portion of the Plaintiffs' final settlement with the SCI Defendants equaled $3,734,415. In finding number thirty, though, the trial court found that "the Plaintiffs later settled with SCI for a cumulative settlement of $13,950,000, of which the Estate received $3,734,160.26." (SCI Defendants' App. 88).

8

Insurance Commissioner, on behalf of the Indiana Patient's Compensation Fund, has also joined as *amicus curiae* in support of the SCI Defendants' brief.

DECISION

On appeal, the SCI Defendants argue that the trial court incorrectly interpreted the GWDS to allow recovery of attorney fees. They point to the language of the GWDS at INDIANA CODE § 34-23-1-1 and contend that the statute distinguishes between circumstances in which a decedent is survived by a widow or widower, dependent children, or dependent next of kin and circumstances in which a decedent is not survived by any dependents. They note that, whereas the language of the statute explicitly allows recovery of attorney fees under the latter circumstances, the statute does not explicitly state that attorney fees are recoverable in circumstances where a decedent is survived by dependents, such as in the instant case. As a result, the SCI Defendants argue that the trial court abused its discretion in allowing the Estate to recover its attorney fees.

In the alternative, the SCI Defendants argue that the trial court abused its discretion in basing its award of attorney fees on the FBD attorneys' normal hourly rates, rather than on the amount that FBD agreed to charge the Estate in its contingency fee agreement. In response, the Estate notes that the GWDS allows recovery of "reasonable" attorney fees. It argues that its recovery, which was based on the attorneys' normal hourly rates, was reasonable in light of the significant amount of work that the attorneys undertook throughout the underlying trial.

On cross-appeal, the Estate argues that the trial court erred in reducing the Estate's recovery by thirty-five percent (35%) based on the fault allocation. It claims that this

9

reduction constituted an abuse of discretion because, even though William Kindle was allocated thirty-five percent (35%) of fault, the Estate's counsel did not spend thirty-five percent (35%) of its time on the issue of William Kindle's liability. The Estate also requests that we remand this case to the trial court for an award of appellate attorney fees. We will address each of these arguments in turn.

1. Recoverability of Attorney Fees

Article 23 of Title 34 of the INDIANA CODE provides a cause of action for a wrongful death. Chapter One of Article 23 is titled "Wrongful Death Generally" and applies to adult decedents. *See* I.C. § 34-23-1. Chapter Two is entitled "Wrongful Death or Injury of a Child"[6] and applies to decedents under the age of twenty.[7] *See* I.C. § 34-23-2. Chapter One, then, is further divided into two sections. The first section of Chapter One is the GWDS, and the second section is the Adult Wrongful Death Statute ("AWDS"), which applies solely to decedents without dependents. *See* I.C. §§ 34-23-1, -2. The GWDS, which is at issue in this case, provides as follows:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within the two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral, or burial expenses, and lost earnings of such deceased person resulting from said

---

[6] We will refer to this chapter as the Child Wrongful Death Statute ("CWDS").

[7] Alternately, an individual qualifies as a child if he or she is under the age of twenty-three and "enrolled in a postsecondary educational institution or a career and technical education school or program that is not a postsecondary educational program." I.C. § 34-23-2-1(b)(2).

wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. *If such decedent depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him, the damages inure to the exclusive benefit of the person or persons furnishing necessary and reasonable hospitalization or hospital services in connection with the last illness or injury of the decedent, performing necessary and reasonable medical or surgical services in connection with the last illness or injury of the decedent, to a funeral director or funeral home for the necessary and reasonable funeral and burial expenses, and to the personal representative, as such, for the necessary and reasonable costs and expenses of administering the estate and prosecuting or compromising the action, including a reasonable attorney's fee, and in case of a death under such circumstances, and when such decedent leaves no such widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees.*

I.C. § 34-23-1-1 (emphasis added).

The SCI Defendants argue that the plain language of the GWDS, as stated above, precludes a recovery for attorney fees. In making this argument, they distinguish between two parts of the GWDS—the non-italicized part above, which applies to decedents who are survived by a widow, widower, dependent children, or dependent next of kin, and the italicized part, which applies to decedents without any such dependents. Because this second part explicitly allows recovery of attorney fees but the first does not, the SCI Defendants contend that the plain language of the GWDS precludes recovery of attorney fees for decedents with dependents. We disagree with this argument because it

11

ignores the omnibus provision of the first part of the GWDS relating to decedents with dependents.

Specifically, the first part provides that the court may award damages "including, but not limited to" damages of the type explicitly delineated. I.C. § 34-23-1-1. In *McCabe v. Comm'r, Ind. Dep't of Ins.*, 949 N.E.2d 816 (Ind. 2011), the Indiana Supreme Court noted that a similar omnibus provision in the AWDS was ambiguous and, thus, subject to statutory construction. We, likewise, conclude that the omnibus provision in the GWDS is ambiguous with respect to whether attorney fees are recoverable, because it provides that recoverable damages are not limited to those the statute delineates. Accordingly, we reject the SCI Defendants' arguments regarding the plain language of the statute and will instead consider whether attorney fees are recoverable under the omnibus provision in the first part of the statute.

Turning to the interpretation of the omnibus provision, the Estate points us to multiple cases that discuss attorney fees under the other wrongful death statutes—the AWDS and the CWDS—and argues that those cases require us to interpret the omnibus provision as allowing a recovery of attorney fees. However, we do not find any of those cases directly on point.

First, the Estate directs us to our decision in *Hillebrand v. Supervised Estate of Large*, 914 N.E.2d 846 (Ind. Ct. App. 2009), which concerned the wrongful death of Charlotte Large ("Large"). In *Hillebrand*, the personal representative administering Large's estate hired counsel to pursue a wrongful death action under the AWDS for Large's death in a motor vehicle accident. *Id.* at 847. The counsel filed a wrongful death

12

action but ultimately mediated a settlement in which the estate received $12,016.72, and Large's sole surviving child, Hillebrand, received $47,938.28. *Id.* The counsel thereafter filed a request that attorney fees be paid from "the entire settlement recovery." *Id.* The trial court granted the counsel's request and ordered $6,545.50 to be deducted from the settlement amount to pay for the attorney fees. *Id.* at 847-48.

Hillebrand appealed the trial court's order, arguing that the trial court had abused its discretion in ordering the fees to be paid out of the settlement because INDIANA CODE § 34-23-1-2(d) provides that while damages awarded under subsection (c)(3)(A) for medical, hospital, funeral, and burial expenses inure to the exclusive benefit of the estate for the payment of the expenses, the remainder of damages inure to the non-dependent child of the decedent, in this case, himself. *Id.* As a result, he argued that the trial court should have ordered the fees deducted from the probate estate rather than the settlement recovery. *Id.*

In our decision on appeal, we acknowledged dicta in a footnote of a previous case, *Thomas v. Eads*, 400 N.E.2d 778, 782 n.4 (Ind. Ct. App. 1980). In the *Thomas* footnote, we had stated that "[b]ecause the list of recoverable damages [in the GWDS] is expressly illustrative and not inclusive, we interpret the statute to allow in every case the recovery of the reasonable costs of administering [a] decedent's estate and prosecuting or compromising the action, including attorney's fees." *Id.* at 850. In *Hillebrand*, then, we agreed with this footnote and stated that "we interpret the [GWDS] to allow in every situation—regardless whether the decedent leaves a widow or widower, dependents or dependent next of kin—the recovery of the reasonable costs of administering the

13

decedent's estate and prosecuting or compromising the action, including attorney fees."

*Id.*

The Estate here points to this language as binding precedent that the GWDS allows recovery of attorney fees, regardless of whether a decedent is survived by a dependent. However, based on the facts of *Hillebrand*, it is clear that our discussion of whether the GWDS permits recovery for decedents with dependents was entirely dicta. Although Hillebrand was Large's son, he was not Large's dependent, and accordingly, all of Hillebrand's arguments were based on the AWDS. Brief for Hillebrand at 3, *Hillebrand*, 914 N.E.2d 846 (No. 70A01-0902-CV-0072), 2009 WL 1465174 at 3. Because Hillebrand was not a dependent, and because he brought his wrongful death action under the AWDS, it was not relevant to our holding whether or not attorney fees were recoverable in instances where a decedent is survived by a dependent. Moreover, the issue in *Hillebrand* did not concern the recoverability of attorney fees at all; we acknowledged that "the only issue raised is whether the [e]state can charge the attorney fees incurred in the pursuit of the wrongful death claim against the settlement funds instead of being paid from the probate estate." *Id.* at 848. In other words, the issue concerned the proper procedure for recovering attorney fees; not whether they *were* recoverable.

Alternately, the Estate also cites to multiple Indiana Supreme Court decisions derived from and including the Supreme Court's decision in *McCabe*. In *McCabe*, the Supreme Court addressed the issue of whether attorney fees were recoverable under the AWDS, which, like the first part of the GWDS, contains an omnibus provision "include

14

but are not limited to" but does not explicitly provide that attorney fees are recoverable. *See id*; I.C. § 34-23-1-2. The Supreme Court found that

> [t]he structure of the AWDS does not parallel that of the GWDS in creating a new statutory cause of action, but it appears to focus upon the mere amplification of damages allowed by the GWDS to include the loss of the adult person's love and companionship in the narrow class of actions for the wrongful death of an unmarried adult without dependents.

*Id.* at 820. As a result of this determination that the AWDS "amplif[ied]" the second section of the GWDS, the Supreme Court interpreted the AWDS and the second part of the GWDS *in pari materia* and concluded that, because the second section of the GWDS explicitly allows recovery of attorney fees, attorney fees should also be recoverable under the omnibus provision of the AWDS.[8] *Id.* at 821. The Supreme Court then reiterated this holding in subsequent decisions, including *Hematology-Oncology of Ind., P.C. v. Fruits*, 950 N.E.2d 294 (Ind. 2011); *Ind. Patient's Compensation Fund v. Brown*, 949 N.E.2d 822 (Ind. 2011); and *Loparex, LLC v. MPI Release Technologies, LLC*, 964 N.E.2d 806 (Ind. 2012).

Significantly for the purposes of this appeal, when comparing the AWDS to the GWDS, the Supreme Court in *McCabe* concluded, without distinguishing the two parts of the GWDS, that attorney fees are "specifically permitted by the GWDS." *See McCabe*, 949 N.E.2d at 821. The Supreme Court also made similar statements in its subsequent decisions. *See Hematology-Oncology of Ind., P.C.*, 950 N.E.2d at 295 ("[r]ecovery of attorney fees are expressly permitted under . . . the [GWDS]."); *Loparex, LLC*, 964

---

[8] *In pari materia* is defined as "on the same subject; relating to the same matter." BLACK'S LAW DICTIONARY 911 (10th ed. 2009). A rule of statutory construction is that if statutes are *in pari materia*, they should be construed together to produce a harmonious statutory scheme. *Sanders v. State*, 466 N.E.2d 424, 428 (Ind. 1984).

N.E.2d at 812 ("[t]he GWDS contain[s] explicit statutory language permitting an award of fees.")  The Estate argues that these statements are controlling authority in the instant case.  We disagree.

Although the Supreme Court generally asserted that attorney fees are recoverable under the GWDS, those Supreme Court cases did not address the issue we have here.  It is undisputed that the second part of the GWDS explicitly allows for recovery of attorney fees.  Because all of the above cases concerned that second part of the GWDS relating to decedents without dependents, it is clear that the Supreme Court's statements that attorney fees are recoverable under the GWDS were based on this explicit provision in the second part of the GWDS.  In contrast, the issue we must address is whether the omnibus provision of the first part can be interpreted to allow for recovery of attorney fees.  Accordingly, the Supreme Court's statements are not determinative here.

Although we do not agree with the Estate on its interpretations of the above cases, we do agree with the Estate that attorney fees are recoverable under the first part of the GWDS for multiple reasons, including that:  (1) attorney fees are the "type" of damages contemplated by the statute; (2) such a conclusion comports with our principles of statutory construction; and (3) the Legislature has "acquiesced" to the recoverability of attorney fees.  We will address each of these factors in turn.

With respect to our first reason, the SCI Defendants argue that attorney fees are not the type of damages that the GWDS contemplates.  They cite to *Estate of Kuba v. Ristow Trucking Co.*, 508 N.E.2d 1, 2 (Ind. 1987), in which the Supreme Court stated that the "loss" recoverable by a claimant under the omnibus provision of the GWDS "must be

16

of the same genre as those enumerated in the statute." The SCI Defendants claim this means that the loss must be of the same "type" of damages and that attorney fees are not the same type because they are not usually recoverable in tort. The *Estate of Kuba*, though, describes what damages constitute "the same genre as those enumerated in the statute." *Id.* It specifies that "[t]he loss must evolve from a deprivation to a survivor as a result of the death and the value assigned is measured by the value of that loss." *Id.* Likewise, the Supreme Court has stated that damages under the GWDS must be compensatory in nature. *See Brown*, 949 N.E.2d at 824. Although attorney fees are not typically recoverable in tort, the Supreme Court has also found that a recovery of attorney fees under the GWDS is compensatory in nature. *Id.* Accordingly, we conclude that attorney fees fit the genre of damages enumerated by the statute and are not barred by the Supreme Court's decision in *Estate of Kuba*.[9]

The second reason we conclude that the omnibus provision allows recovery of attorney fees is based on statutory construction. When a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. *Ballard v. Lewis*, 8 N.E.3d 190, 194 (Ind. 2014). When confronted with a question of statutory construction, our primary goal is to determine and effectuate legislative intent.

---

[9] The SCI Defendants also note that Indiana courts have held that the GWDS does not permit recovery of punitive or treble damages. *See Estate of Kuba*, 508 N.E.2d at 3; *Durham ex. rel. Estate of Wade v. U-Haul Int'l*, 745 N.E.2d 755 (Ind. 2001). However, because punitive and treble damages are not compensatory, we conclude that these cases are not analogous to the case at hand, which concerns compensatory damages. *See Estate of Kuba*, 508 N.E.2d at 3 ("Damages recoverable under the wrongful death statute thus serve a compensatory goal. . . . The treble damage statute by contrast is punitive in nature, imposing a greater amount of damages than those actually incurred due to the violation of the criminal statute. A loss enunciated as treble damages pursuant to statute is adverse to the provisions of the wrongful death act.").

17

*City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). To do so, we examine the statute as a whole. *Id.* We do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result. *Id.* Further, related statutes are *in pari materia* and should also be considered to effectuate legislative intent. *Horn v. Hendrickson*, 824 N.E.2d 690, 698 (Ind. Ct. App. 2005). Where statutes address the same subject, they are *in pari materia*, and we harmonize them if possible. *Id.; Ballard*, N.E.3d at 194.

Here, the GWDS, the AWDS, and the CWDS all relate to the same subject matter, wrongful deaths, and each statute allows for recovery of attorney fees. We do recognize that the Legislature did not explicitly provide for recovery of attorney fees in the AWDS as it did in the CWDS and the second part of the GWDS relating to decedents without dependents. However, the Supreme Court has approved the recovery of attorney fees under the AWDS in a series of cases. Absent an explicit provision to such an effect, we conclude that it would be illogical for the GWDS to preclude recovery of attorney fees for only one category of decedents while recovery is allowed in every other wrongful death action. Nor have the SCI Defendants presented a logical argument justifying such an interpretation.

Instead, the SCI Defendants argue that statutory construction dictates that attorney fees should not be recoverable under the omnibus provision, because such an interpretation would render the second part of the GWDS meaningless. They note that while the GWDS was enacted in 1852, the second part of the GWDS was not added until a legislative amendment in 1933. They contend that the General Assembly would not

18

have had any reason to amend the first part of the GWDS to add the second part if the first part already allowed for a recovery of attorney fees. However, this argument overlooks additional differences between the first and second parts of the GWDS. The first part of the GWDS only applies to decedents with dependents. As a result, prior to the addition of the second part, it was not possible for a personal representative of a decedent without dependents to recover losses resulting from a wrongful death in order to pay for the necessary and reasonable costs of administering the decedent's estate. The addition of the second part of the GWDS rectified that omission. In addition, while the damages recoverable under each part are largely similar, the first part includes the omnibus provision, while the second does not. This difference indicates that a second purpose of the second part of the GWDS was to limit the damages recoverable in the case of a decedent without dependents to only those losses enumerated by the statute. In light of these differences between the first and second parts of the GWDS, we cannot agree with the SCI Defendants that allowing recovery for attorney fees under the omnibus provision would render the second part of the GWDS meaningless.

Finally, our third reason for concluding that the omnibus provision allows recovery of attorney fees is based on the principle of legislative acquiescence. Although we do not agree with the Estate that *Hillebrand* and *McCabe* have precedential authority here, we do find it significant that the Legislature has not responded in any way to refute the dicta in either case. As the SCI Defendants note in their brief, "failure of the Legislature to change a statute after a line of decisions of a court of last resort giving the statute a certain construction, amounts to an acquiescence by the Legislature in the

19

construction given by the court, and that such construction should not then be disregarded or lightly treated." *Perkinson v. Perkinson*, 989 N.E.2d 758, 763 (Ind. 2013). Accordingly, this omission indicates to us that the Legislature agrees with the *Hillebrand* Court's statement that attorney fees are recoverable regardless of whether a decedent is survived by a dependent. Based on legislative acquiescence and our intent to harmonize the wrongful death statutes, we conclude that the omnibus provision of the first part of the GWDS does allow for the recovery of reasonable attorney fees.[10]

2. Calculation of Attorney Fees

Next, we must turn to the issue of what constitutes reasonable attorney fees. The SCI Defendants argue that the Estate's recovery should have been limited to the amount that the Estate was required to pay FBD under its contingency fee agreement. In support of this argument, the SCI Defendants note that the GWDS is compensatory in nature and designed to compensate plaintiffs for only the expenses they actually incurred. In response, the Estate argues that the attorney fee calculation merely had to be "reasonable."

Before turning to the merits of the parties' arguments, we must note that we generally review an award of attorney fees for an abuse of discretion. *Benaugh v. Garner*, 876 N.E.2d 344, 347 (Ind. Ct. App. 2007), *trans. denied.* The trial court has

---

[10] The SCI Defendants also cite the Indiana Pattern Jury Instructions as evidence that the Legislature did not intend to include attorney fees as the type of damages recoverable under the GWDS. From 1966-2010, the comments to Indiana Pattern Jury Instruction 11.72 stated that an estate's cost of administering and prosecuting a wrongful death action "are authorized only in those wrongful death actions in which there is no surviving spouse or no dependent children or dependent next of kin." (SCI Defendant's Addendum 38). However, we will not further address this argument as even the SCI Defendants acknowledge that the comment was amended in 2010 in response to *Hillebrand* in order to include attorney fees in every situation.

broad discretion in assessing attorney fees, and we will reverse only if the award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* However, we apply a de novo standard of review with respect to any legal conclusions upon which the trial court based its decision. *Wysocki v. Johnson*, 4 N.E.3d 1218, 1221 (Ind. Ct. App. 2014).

In support of their argument, the SCI Defendants cite *Butler v. Ind. Dep't of Ins.*, 904 N.E.2d 198 (Ind. 2009). In *Butler*, the Supreme Court held that if medical providers issue statements charging for medical, hospital or other health care services but thereafter accept a reduced amount in full satisfaction of the charges, the amount recoverable for reasonable hospital and medical expenses is the amount the plaintiffs actually pay, not the amount originally billed. *See id.* at 199. Based on this case, the SCI Defendants argue that the Estate should only be able to recover the amount it would have actually had to pay for attorney fees, which was governed by the contingent fee agreement. Likewise, the SCI Defendants also cite to the Supreme Court's language in *Estate of Kuba* that "the loss must evolve from a deprivation to a survivor as a result of the death and the value assigned is measured by the value of that loss."[11] *Estate of Kuba*, 508 N.E.2d at 2. They contend that the amount that the Estate actually was deprived of was the amount it owed for attorney fees pursuant to the contingent fee agreement.

We agree. As we have noted, an award of attorney fees under the GWDS is compensatory in nature. *See Brown*, 949 N.E.2d at 824. The purpose of compensatory

---

[11] The SCI Defendants also cite cases from other jurisdictions. We will not address these cases because we find the reason and attendant logic of Indiana cases to be a sufficient guide with regard to this issue.

21

damages is "to compensate a plaintiff for loss suffered as a result of another party's tortious act and to place him in the same financial position in which he would have been had the tort not occurred." *A.J.'s Automotive Sales, Inc. v. Newman*, 725 N.E.2d 955, 970 (Ind. Ct. App. 2000), *trans. denied.* We have held that "[w]hile an aggrieved party must be compensated, he should not be placed in any better position." *Wiese-GMC, Inc. v. Wells*, 626 N.E.2d 595, 597 (Ind. Ct. App. 1993), *reh'g denied*, *trans denied.*

Here, the trial court's award of damages placed the Estate in a much better position than it would have been through its contingent fee agreement. At the conclusion of the trial, the Estate had recovered $624,000 from the Midland Settlement and either $3,734,415 or $3,734,160.26 from its settlement with the SCI Defendants.[12] As the Midland Settlement occurred before trial, the Estate owed FBD twenty-five percent (25%), or $156,000, of this amount under the contingency fee agreement. As the Estate's claims against the SCI Defendants went to trial, it owed FBD thirty-three and one-third percent (33⅓%) of its recovery from its settlement with the SCI Defendants, which was equivalent to either $1,244,680.52 or $1,244,595.61. At a maximum, therefore, the Estate owed FBD $1,400,680.52 in attorney fees based on the sum of its recoveries from the Midland settlement and its settlement with the SCI Defendants. In contrast, the trial court awarded the Estate $2,329,101 in attorney fees.

Because attorney fee awards are compensatory in nature and the trial court's award placed the Estate in a better position than it would have been under the contingent

---

[12] As stated previously, these conflicting numbers are based on the trial court's findings of fact, which state two different settlement amounts.

fee agreement, we conclude that the trial court abused its discretion in calculating attorney fees. Instead, the trial court should have based its award on the amount that the Estate had actually lost as a result of its claim, which is equal to the amount it owed its counsel under that agreement. We remand for the trial court to enter a revised award of attorney fees that is consistent with the attorney fee damages the Estate incurred under its contingency fee agreement.[13]

3. Reduction of Recovery Due to Non-Party Fault

On cross-appeal, the Estate argues that the trial court abused its discretion in reducing the award of attorney fees by thirty-five percent (35%) based on William Kindle's thirty-five percent (35%) allocation of fault. The Estate cites to other jurisdictions that have declined to allow such reductions. It also notes that, even though William Kindle was thirty-five percent (35%) at fault, its counsel did not spend thirty-five percent of their time defending William Kindle's liability. In response, and in defense of the trial court's reduction of the fees, the SCI Defendants cite to Indiana's Comparative Fault Act, which provides a method for allocating damage liability among persons whose fault have contributed to an injury or death.

The Comparative Fault Act states that "[i]n an action based on fault, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault . . . ." I.C. § 34-51-2-5. As we have already found above that attorney

---

[13] Notably, this revision only applies to the trial court's award of attorney fees. The trial court's award of expenses is not included in this amount and should remain unchanged.

fees are considered compensatory damages under the GWDS, we conclude that, as the SCI Defendants propose, the trial court's use of the Comparative Fault Act as a basis for calculating reasonable attorney fees was appropriate. Accordingly, we conclude that the trial court did not abuse its discretion in reducing the Estate's award of attorney fees by thirty-five percent (35%) as a result of William Kindle's non-party fault allocation.

4. Appellate Attorney Fees

Finally, also on cross-appeal, the Estate requests that we remand to the trial court for an award of appellate attorney fees. The SCI Defendants did not respond to this request in their reply brief, and the Estate therefore argues that they have waived any objections.

Regardless of whether the SCI Defendants have waived any objections, we decline to award appellate attorney fees. In pertinent part, Indiana Appellate Rule 66(E) provides that a court on review "may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." In *Orr v. Turnco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind. 1987), the Indiana Supreme Court noted that an appellate court "must use extreme restraint" in exercising its discretionary power to award damages on appeal. "Hence, the discretion to award attorney fees under App. R. 66(C) is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 95 (Ind. Ct. App. 2001) (internal quotation omitted). Here, SCI's appeal fits none of these criteria and we decline to award appellate attorney's fees as the Estate requests.

24

Affirmed in part, reversed in part, and remanded.

MATHIAS, J., and BRADFORD, J., concur.